Good morning, Your Honors. May it please the Court, this is Robin Smith, Mayor Appellant Salvatore Diaz. Can you all hear me okay? Yes. Okay, thank you. Mr. Diaz's conviction is a 20-year-old conviction that was obtained by court-martial. From the time that he was ways that he could imagine. In this case, originally he was charged as a federal offender and I characterize it that way because that's the way that the courts have characterized offenders under the SORNA statute. For example, in Holcomb, he was characterized as a federal offender and the Nichols case was distinguished. I'm sorry, Holcomb was characterized and he was a state offender and Nichols was distinguished on the ground that the defendant in Nichols was a federal offender. So, Mr. Diaz was originally charged as a federal offender because of his conviction by court-martial and then the district court asked the government to explain how the indictment was valid after the Nichols case, which decided that the defendant could not be in Kansas when he had moved to the Philippines and not registered there, obviously because it's not a subject of SORNA. So, the government changed the theory of the case on November 19th, 2018 in response to the district court's question and he was then charged as moving from New York to another state and not registering in the new state. At that point, Mr. Diaz was pro se and the district court informed him that if he didn't file any motions regarding venue that by December 21st, which was about a month later, any venue argument would be waived. Mr. Diaz did not file his motion in December. He filed it a couple days before trial. Could I interrupt you for a minute, please, to ask? This is Judge Carney. Hadn't the question of venue been subject to discussion by the government and Mr. Diaz before the superseding indictment? The superseding indictment was November 19th, 2018, but the original indictment was from April 2017 and my understanding was that venue was not a brand new issue and that the time compression that you're suggesting isn't entirely reflective of the record. He went ahead later, I guess in February, and filed his objection to venue, but this was not particularly a new issue. Am I incorrect in that understanding? I don't believe that you're correct, Your Honor. However, this was the first time that he was without counsel and he was trying to put forth this venue objection on his own. It's not a simple issue, even though he's now very versed in it. At the time, he was pro se, he was learning, and so he did not file his motion in time that the district court ordered. However... With regard to the waiver point, on the merits of the venue claim, I don't really see a distinction between your case, Mr. Diaz's case, and Holcomb, where we held that a sort of prosecution under the interstate travel clause, which was the basis of the second indictment, the First Amendment indictment, may be prosecuted in any venue where the offense was begun, continued, or completed. There's a departing venue as well as the arrival venue. And I'm not sure I understand the distinction you're trying to draw between the portrayal of him in the first indictment as a federal offender and later the focus on says venue is okay in this venue in New York, the departing jurisdiction is acceptable. Am I missing something? That is what Holcomb says. Yes, that is what Holcomb says. Our argument is that there is a distinction that actually this court, a different panel, made in Holcomb between federal offenders and state offenders. And that doesn't change at government's choice. It's based on what is the distinction? I mean, why does it matter? How are the two different? Because as a federal offender, Mr. Diaz does not have to travel an interstate commerce meter in order to come under federal law. Because as a federal offender, he's already subject to federal law. And that's the way the statute reads. In terms of the venue question, why does it matter? I think that's what Judge Carney was trying to figure out in Me Too. Why does it matter? For purposes of venue, whether he's a state offender or a federal offender. He starts the crime when he departs New York. Well, no, because the SORNA statute does not, there's no crime until the person has lived or resided and been a student or had an occupation in the other state for three days. So, Joe, traveling from another state, I'm sorry. I'd like to go back a moment to the forfeiture, what people call waiver question, because, okay, he didn't come in in time. But then on appeal, was the question of the timeliness ever challenged? That is, when I read the appeal, when he was counseled on appeal, they went to this merits question, which you've been discussing, and which is very interesting. But it wasn't the timeliness question about whether he as a pro se and so on, forfeited because it wasn't raised on appeal. So that the finding of not timeliness was never before the appellate court because it wasn't raised. And so it was forfeited. So why should we get to the merits question at all? A few reasons, your honor. Number one, he was pro se and the courts have given extra. Was he pro se on appeal? No. No, he was pro se when he filed it late. And that might have been an issue that when he was counseled on appeal, could have been raised. That is what you're saying now, could have been raised by counsel on appeal. But counsel on appeal did not raise it. So how is that issue even before us? Which appeal are you talking about, your honor? Because this is the direct appeal, and I'm his counsel. It was, I didn't raise it in the initial brief, but then the defendant, I'm sorry, the government argued that Mr. Diaz had waived his right to appeal this issue because he had been challenged it in time. And the district court did say that he had waived the issue, but then the district court did reach the merits. So what are you referring to where the forfeiture issue was not raised? I believe that it wasn't in, I may be mistaken, but I believe that it was not raised before, was it? In your brief, I think, is what we're focusing on. Yeah. In your first brief on appeal in our court now, you went right to the merits and you did not challenge the district court's to. You didn't raise that in your blue brief, which is when you have to raise it. Well, I would argue not necessarily, your honor, because I don't know that the government is going to pursue the waiver argument because that's another matter. They may waive the waiver argument. I'm just asking why this is before us when you didn't raise it on appeal in your brief in chief, which is when it has to be raised. You have one minute. We would argue that because it's an argument for the government to make that he waived it. It was a ground for the district court decision though, correct? I'm sorry. I didn't hear you. Waiver and untimeliness was a ground for the district court decision, correct? Yeah. Therefore, it was for you to challenge that in your blue brief. In hindsight, yes, I should have done that. But at the time, I thought it might be okay to wait and see what the government said about the waiver argument. Then I did strongly address it in the reply. Could I ask you one question? You have been arguing also that your client is entitled to launch a collateral attack on his court martial conviction in this SORNA registration prosecution. I'm having difficulty seeing any basis within position. What's the strongest basis that you can suggest to us for being allowed to attack the predicate conviction that made him subject to SORNA in the first place in this registration prosecution? Why does that make sense at all? Just looking at it from the defendant's perspective and the due process perspective, that he's subject to this lifetime registration requirement based on a conviction that he says is improper and he's been fighting since it happened. The jury is sitting there- Counsel, we have all sorts of cases in other things, career offenders and so on, in which we say may not be raised collaterally. Your only argument in your brief has to do with a special treatment of foreign issues with respect to foreign convictions with respect to SORNA. But I would have thought that that cuts against you, because that's an expressio unius, exclusio all the rest argument. That is, if that law says here are a few that under some circumstances may be attacked collaterally, it certainly suggests that in the bulk of the cases, they may not be attacked collaterally, doesn't it? I agree that that is an argument and that's a fair reading, but it's also a fair reading and most importantly for due process, that there was an assumption by the legislature that convictions obtained in the United States are generally fair because of our due process protections, whereas foreign convictions sometimes don't have the same due process protections that we have here. And my point in the brief that how horrifying it would be for a family to sit and watch as a defendant with a foreign conviction can challenge the underlying conviction, but a defendant in a United States prosecution could not. It just seems illogical that that could be the outcome of the situation. And Mr. Diaz strongly wanted to fight this. It could have been limited. The district court didn't have to allow him to totally litigate that case, but it could have been a five or 10 minute presentation about why his conviction was unfair, or 20 minutes even. It would be nice in terms of due process for a defendant to have that opportunity when he's going to be subject to the rest of his life or this type of registration. He's living in a trailer, you know, way out in the boondocks in Virginia because of this and due process. You're well over your time. You have some time for rebuttal. Let's hear from the government. You have some time for rebuttal. Thank you. Daniel Messam May please the court. My name is Daniel Messam for the United States. I'm an assistant U.S. attorney for the Southern District of New York, and I represent the United States in this appeal as I did in the district court. I'd like to start with counsel's position regarding the venue waiver in this case. As Judge Calabresi and Judge Carney noted in their questions, there were two independent bases for Judge Caproni's ruling on venue. First was that the motion was untimely without good cause, and second were the merits of the venue argument, which were firmly decided by Holcomb just two years ago. As to the untimely without good cause finding, Diaz failed to contest that finding in his opening brief, and he has thus waived that argument on appeal. That precludes any consideration of the venue argument on this appeal. That is an independent basis of the decision, which was not raised in the initial brief. As to counsel's collateral attack points, there's no basis in the statute or case law applying similar statutes where the fact of prior conviction is an element of the crime to find that there is a basis to collaterally attack a prior conviction. The so-called foreign conviction loophole is no such loophole. Actually, that provision just delegates the attorney general an ability to define certain foreign convictions that may not be counted under SORNA. It does not provide an ability to collaterally attack those convictions in a SORNA prosecution. In addition, it's not totally clear. It seems from counsel's arguments that Diaz is arguing Judge Caprone's evidentiary ruling, which is reviewed on an abuse of discretion standard, and there's no basis to conclude that Judge Caprone's decision that the facts underlying prior conviction were irrelevant was an abuse of discretion. Unless the panel has any additional questions, I'll rest on my submission. Well, I'll just say this. The part that is most interesting and is foreclosed is appellant's claims with respect to double jeopardy, with respect to all of those things, and I believe, as you say, that these things are foreclosed to us, but I've got to say that the notion of treating the SORNA thing as civil and that therefore all those things are not there and shouldn't be looked at strikes me as absurd. I agree with you that it isn't before us because it's been settled, but boy, to call these things civil is really to make, I think, a grievous mistake, but that's, as I say, I think it's settled and there's nothing to be said. Thank you. All right. Thank you. Well, Ms. Smith, we'll hear your rebuttal. Thank you. I would strongly urge the court to reach the merits of the issue for venue. If the court decides that because I didn't raise the waiver issue in my blue brief, Mr. Diaz will have a very strong and effective assistance of appellate counsel argument and the issue will just continue to be litigated, and I did address it in the reply, but if this court does not reach the merits of the venue issue and holds that I waived it by not raising it in the blue brief, he will have a strong and effective assistance of counsel claim that I would advise him to raise, even though it's a conflict for me, so I would just ask the court to please reach the merits on the venue issue. Let me ask you one question about that. If these are civil cases, does an ineffective assistance of counsel lie with respect to it? That is, it may be that a person has a right to counsel, but I think that would be a very interesting issue, and indeed, it might raise the question that I was trying to raise, which say that it was settled, so that the finding that this would be a question of ineffective assistance of counsel would itself be an interesting one. Well, I'm in a difficult position to address that, as I would be the one accused of ineffective assistance of counsel, but my point is I agree with you, Your Honor. This is not a civil effect of his conviction. It's a lifetime... Yeah, but that's been pretty well settled, both by the Supreme Court and by our court, I'm afraid. Well, the guidelines were approved for 20 years until it was decided that the mandatory nature of the guidelines was constitutionally defective, so over time, we learn about how the statutes affect the defendant. It doesn't mean that it can never be revisited. Oh, it can be revisited, but it has to be revisited in Washington. True, true, and that's why I raised it in my brief, so I can raise it in Washington in the event that this court affirms Mr. Diaz's conviction. Just to distinguish the cases where the waiver was applied, Levitzer, the defendant, did not raise a venue until the close of the government's case, and in Kahn, the trial had already started. In Mr. Diaz's case, there was no prejudice to anyone by the defendant raising the venue issue before trial started, and the district court did reach the merits of the case. You're well over. Thank you for your argument. Thank you to both sides. The court will reserve decision.